HEFNER, STARK & MAROIS, LLP
Howard S. Nevins (CA Bar Assn. No. 119366)
Aaron A. Avery (CA Bar Assn. No. 245448)
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833-3883
Telephone: (916) 925-6620
Fax No: (916) 925-1127
Email: hnevins@hsmlaw.com

Attorneys for
SUSAN DIDRIKSEN,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### (Sacramento Division)

| | |
|---|---|
| In re<br><br>DWIGHT ALAN BENNETT,<br><br>Debtor. | Case No.: 11-40155-A-7<br>DC No.: HSM-004<br>Date: November 23, 2015<br>Time: 10:00 a.m.<br>Place: 501 I Street<br>      Sacramento, CA<br>      Ctrm. 28, 7th Flr.<br>Judge: Hon. Michael S. McManus |

### TRUSTEE'S MOTION FOR APPROVAL OF SALE OF ASSETS OF BANKRUPTCY ESTATE (LITIGATION RIGHTS AND RELATED CLAIMS)

SUSAN DIDRIKSEN, the duly appointed Chapter 7 Trustee ("Trustee") in the pending bankruptcy case of DWIGHT ALAN BENNETT ("Debtor"), Case No. 11-40155-A-7, submits this Motion for Approval of Sale of Assets of Bankruptcy Estate (Litigation Rights and Related Claims), and in support thereof, respectfully represents as follows:

1.    This case was filed as a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 18, 2011. Pre-petition, the Debtor operated a business involving the breeding and raising of horses, the boarding of horses, and providing riding lessons.

2.    The case was converted to one under Chapter 7 by order dated November 15, 2011. The Trustee was appointed as the Chapter 7 Trustee on November 15, 2011, and presently serves in that capacity.

3. Jurisdiction for the filing of this Motion exists pursuant to 28 U.S.C. §§ 157 and 1334; 11 U.S.C. § 363(b), and the reference to this court by the District Court for the Eastern District of California.

### Background and Requested Relief

4. The property that is the subject of this Motion (the "Litigation Rights") consists of all of the bankruptcy estate's claims, rights, appeals and defenses related to the property known as Whispering Pines in Susanville, CA, including but not limited to any and all claims, rights, appeals and defenses in the case of Allen v. Summit Financial Group, Inc., et al., Lead Case No. 45679, consolidated with Case No. 50324 and related to Case No. 46190 and appellate Case No. C072171 (the "Litigation"). Further detail regarding the Litigation is provided below.

5. The Trustee and Bank of America, N.A., Nationstar Mortgage and Wells Fargo as Trustee for the MLMI Trust Series 2005-HE3 (collectively "Buyer") have entered into an Asset Purchase Agreement, signed by the parties as of October 12, 2015 (the "Purchase Agreement"). A true and correct copy of the Purchase Agreement is attached as Exhibit "A" to the Exhibits Cover Sheet filed and served with this Motion. Pursuant to the terms of the Purchase Agreement, described in greater detail below, Buyer shall pay $40,000.00 ("Purchase Price") for the purchase of the Litigation Rights.

6. Since her appointment, the Trustee has evaluated the options for monetizing the Litigation Rights, which options included the litigation of same and the possible sale of same. Early on, the Trustee, through her counsel, participated in a number of aspects of the messy, complex ongoing state court Litigation, both as they implicated this bankruptcy case, and as required by the state court. The messy, drawn-out nature of the Litigation was recently pointed out to this court in the Trustee's motion to abandon the estate's interest in real property located in Lassen County, which the court granted by order filed October 1, 2015. (Docket 300)

7. In short, the Litigation was (and remains) centered primarily in the Lassen County Superior Court, and involves numerous parties, including a state-court appointed Receiver.

The disputes bled over into another action in the Orange County Superior Court involving still additional parties, including The Grace Foundation, a horse rescue organization that the Trustee now believes to be defunct. As noted in the Trustee's recent abandonment Motion, the Trustee understands that the Orange County action has concluded.

8.  The Litigation in the Lassen County Superior Court, however, has now been going on for eight years, and has given rise to several different independent actions which have now been consolidated or dismissed. There have been hundreds of docket entries in the consolidated actions, as well as one appeal. Moreover, the overall landscape surrounding the Litigation includes at least one criminal action. Contempt orders have been entered in connection with the Litigation.

9.  The Debtor and Norm Allen ("Allen"), another individual allied with the Debtor and principal litigants in the Litigation, are pro se. The Buyer (banks) is / are represented by a large global law firm. Other parties involved in the Litigation are represented by local attorneys. The Trustee provides these facts in an entirely objective manner, in no way inferring any level of quality to such parties' representation of their respective interests. From discussions with various parties and their counsel, and observations / conclusions drawn from their review of numerous pleadings, court decisions in the Litigation, and the overall dynamics presented, however, the Trustee and her professionals have determined that the Litigation is likely to continue unabated for the foreseeable future.

10. Through the Litigation, the Trustee understands that Plaintiff Allen seeks to rescind the sale of a 14-acre lot that makes up a portion of the Whispering Pines Ranch. He names his business partners, Dwight Bennett and Judy St. John ("St. John") , as defendants, among others. Allen alleges that Bennett and St. John sold 14 acres of their 54 acre property to him. Allen alleges that all parties to the sale understood that the 14-acre lot included all improvements on the Ranch. However, the improvements were actually on the remaining 40-acre lot, which Bennett and St. John held equally. Allen's claims are all premised on the sale of the 14-acre lot. Co-defendant Wells Fargo as trustee holds the deed of trust on the 14-acre parcel, which was intended to encumber the improvements on the 40-acre parcel.

Plaintiff seeks monetary damages and reformation of the written contract.

11. Allen's Second Amended Complaint alleges causes of action for intentional and negligent misrepresentation, reformation of contract, and imposition of constructive trust. However, Allen's only remaining claims against the bank defendants is for reformation of contract, which is arguably moot given the court's entry of judgment on Wells Fargo as trustee's cross-complaint.

12. Wells Fargo as trustee and Bank of America filed a cross-complaint against Allen, Bennett, St. John, and Evans Appraisal Services alleging causes of action for declaratory relief, rescission, reformation, subrogation, equitable lien, equitable mortgage, negligent misrepresentation, and professional negligence. Wells Fargo as trustee alleges the deed of trust was intended to be secured by the improved portions of ranch. Wells Fargo as trustee and Bank of America asked for an equitable lien and mortgage on the improvements and a reformation of the instruments to reflect the intentions of the parties, as well as monetary damages and other relief. Judgment was entered in favor of Wells Fargo as trustee on its claims for equitable lien and equitable mortgage on July 19, 2012, and that judgment is pending appeal by Bennett.

13. St. John filed a cross-complaint against Wells Fargo Bank as Trustee (also erroneously named as Wells Fargo Bank, N.A.) and Bank of America, Vicki Lozano (the Receiver), the County of Lassen and three of its employees, and The Grace Foundation of Northern California, alleging multiple claims for the alleged loss of her horses and personal property. On April 30, 2015, the court entered an order granting a joint motion for a good faith settlement determination approving the settlement and release between Wells Fargo Bank, N.A., Bank of America, N.A., Vicki Lozano, and St. John pursuant to CCP § 877.6.

14. The Trustee does not believe Mr. Bennett has served any affirmative claims on any of the parties in this action, although he has been named as a defendant in claims brought by almost all of the parties. His Litigation Rights consist of his right to pursue the appeal of the state court's July 19, 2012, entry of judgment in favor of cross-complainant Wells Fargo Bank, N.A. as Trustee for MLMI Trust Series 2005-HE3. The court's judgment granted an equitable

lien and an equitable mortgage over the 40-acre parcel at issue in this case, and reformed the deed of trust for the loan at issue so that it is now secured by the entire 40-acre parcel.

15. While compelled to participate in the Litigation and other non-litigation related aspects of the Litigation early on and sporadically over the past several years, the Trustee and her counsel endeavored to keep the administrative expenses of this estate to a minimum. As this court knows, that is often an almost impossible undertaking. Yet the Trustee determined that abandonment of the Litigation Rights was inappropriate because of the reasonable possibility that such rights had, or ultimately would have, meaningful value for the estate and its creditors. The Trustee's decision in this regard has been validated through the entry into the Purchase Agreement that is the subject of this Motion.

16. Over the course of several years, the Trustee, often through her counsel, communicated with various counsel for parties in the Litigation, including counsel for the Buyer, regarding the Litigation and the possible resolution of same (through sale or otherwise). Until recently, those efforts did not result in an agreement.

17. Having now reached an agreement for the sale of the Litigation Rights, this Motion seeks approval from the court of (i) the Trustee's entry into the Purchase Agreement; and (ii) the sale and transfer of the estate's interests in the Litigation Rights either to Buyer, if Buyer is the sole or successful bidder thereon, or to a successful overbidder, if such overbidder bids more than Buyer for the purchase of the Litigation Rights, all pursuant to the terms of this Motion and the Purchase Agreement.

### Agreement for Sale of Estate's Interest in Sale Assets

18. The material terms of the Purchase Agreement are as follows:

    a.    The Purchase Price for the Litigation Rights is $40,000.00 ("Purchase Price" or "Sales Proceeds");

    b.    Buyer has deposited the sum of $10,000.00 (the "Deposit") with the Trustee. The Deposit is creditable against the Purchase Price. If Buyer fails to close the purchase due to default by Buyer, the Deposit shall be non-refundable and shall be retained by the Trustee as liquidated damages for such breach;

c. The proposed sale of the Litigation Rights and the Purchase Agreement are subject to Bankruptcy Court approval through the granting of this Motion;

d. Buyer will pay the Purchase Price and close on the sale of the Litigation Rights on or before ten (10) calendar days after entry of the Court's order approving this Motion (the "Closing Date"), provided, however, that the Trustee may provide Buyer with a reasonable extension of the Closing Date, in writing, if authorized by this court pursuant to this Motion;

e. Buyer will acquire the Litigation Rights "AS IS," "WHERE IS," "WITH ALL FAULTS." Trustee is making no representations or warranties, directly or indirectly, with respect to the condition of the Litigation Rights or the estate's rights, title or interests therein, including any warranty or representation regarding the ability or likelihood of prevailing in any litigation to establish the estate's interests in the Litigation Rights or the validity or status of the estate's rights or interests in the Litigation Rights. Buyer is relying solely on its own investigation of the Litigation Rights in the decision to acquire the Litigation Rights;

f. In the event that Buyer is the winning bidder of the Litigation Rights, Buyer will waive any claim it may have against the Estate and will not participate in any distributions from the proceeds of the sale of the Litigation Rights on account of such claims.

g. The proposed sale to Buyer is subject to an auction and overbidding at the hearing on this Motion, with the initial overbid amount set at $45,000.00, and minimum increments thereafter of $1,000.00. If no overbids for the Litigation Rights are made at the hearing on this Motion, or if the Buyer is the highest bidder for the Litigation Rights at the hearing on the Motion, the Deposit shall be applied to the Purchase Price or the highest price bid by Buyer at the hearing on the Motion, whichever is greater. If a Qualified Overbidder (defined below) outbids Buyer and closes its purchase of the Litigation Rights, then the Purchase Agreement shall terminate, the Deposit shall be returned to Buyer.

h. If at least one qualified bidder who has submitted an Overbid appears at the Auction, the Trustee shall request that the Court designate as the leading bid at the Auction such overbid as the Trustee determines to be the best and highest Overbid received

for the Litigation Rights. Thereafter, the Court will solicit better and higher bids for the Litigation Rights, in bidding increments of at least $1,000, from the qualified bidders participating in the Auction (including Purchasers, if they choose to participate) until the best and highest bid for the Litigation Rights has been determined by the Court. The qualified bidder who submits the second best/highest bid for the Litigation Rights at the Auction shall be designated as the backup bidder.

### Fair Price for Litigation Rights

19. As noted above, the Trustee and her counsel have been "involved" in the Litigation for some years now - admittedly as much as possible on the periphery but nevertheless involved due to the estate's interests in the Litigation Rights. The Trustee and her counsel have reviewed enough of the Litigation, and have spoken with enough of the active players, to know that the Litigation has and will continue to be hard-fought and costly, perhaps with no real end in sight for a considerable additional period.

20. After weighing the options available to her, which include but are not limited to playing a far more active role in connection with the Litigation, as well as selling the estate's interests in the Litigation Rights, the Trustee concluded that a sale of such interests is in the best interests of the estate and its creditors.

21. While it is difficult to value the Litigation Rights, the Trustee has concluded from her reasoned assessment of the costs to litigate, the fact that the estate has no funds with which to litigate, and the substantial uncertainty associated with any litigation but far greater uncertainty with respect to the instant Litigation, that the Purchase Price offered by the Buyer, and accepted by the Trustee subject to this court's approval, is reasonable.

22. Furthermore, the overbidding process will provide an opportunity for any party wishing to pay more for the Litigation Rights to participate in the bidding and acquire the estate's interests, if any, in the Litigation Rights. Thus, for example, if the plaintiff(s) in the Litigation value the Litigation Rights in an amount greater than the proposed Purchase Price, they are free (and in fact encouraged by the Trustee) to overbid for such rights.

23. On balance, in consideration that the Purchase Price is greater than the amount

previously proposed to be accepted by the Trustee and that the overbidding process will provide an opportunity for interested parties to increase the price to be paid for the estate's interests in the Litigation Rights, the Trustee believes the Purchase Price proposed to be paid pursuant to the Purchase Agreement is fair to the estate.

### Proposed Terms for Overbidding

24. The Trustee proposes that any persons or entities wishing to bid on the Litigation Rights be required to first become a qualified overbidder (a "Qualified Overbidder") in the manner set forth below, prior to the commencement of the hearing on the Motion.

25. Any person or entity wishing to become a Qualified Overbidder must deliver to the Trustee a non-refundable deposit in the amount of $10,000.00 (the "Overbidder Deposit"), in the form of cash, a cashier's check or money order made payable to "Susan Didriksen, Chapter 7 Trustee of the Dwight Alan Bennett Bankruptcy estate," or wire transfer, which will be applied to the purchase price for the Litigation Rights if the Qualified Overbidder is the successful purchaser following the hearing on the Motion, and demonstrate to the Trustee the ability to close within ten (10) calendar days of entry of the Court's order approving this Motion, by cash, cashier's check, money order, or wire transfer. Such financial showing shall include, without limitation, either overbidder qualification for financing acceptable to Trustee and sufficient to pay the initial overbid for the Litigation Rights, or proof of the ability of the overbidder to fund payment of the initial overbid in cash. The Overbidder Deposit and showing of financial ability to perform shall be delivered to the Trustee no later than five (5) business days prior to the date scheduled for the hearing on this Motion by cash, cashier's check, money order, or wire transfer.

26. As noted above, the Purchase Agreement provides that the initial overbid, if any, must be in the amount of at least $45,000.00. The Trustee proposes that further overbids, if any, be in increments of $1,000.00, also as provided for in the Purchase Agreement. The high bidder must purchase the Litigation Rights on terms identical to those set forth in the Purchase Agreement, subject to any modifications ordered by the Court. If the Buyer is the high bidder, it shall pay the greater of its high bid or $45,000.00 for the Litigation Rights.

8

\\hsmfs2\clients\Didriksen, Susan\Bennett, Dwight Alan (7782-0009)\Pldg (hsm-4) sell litigation rights\pldg sale litigation rights mtn.wpd

HEFNER, STARK & MAROIS, LLP
Sacramento, California

27. In the event a Qualified Overbidder outbids the Buyer at the hearing on this Motion, Buyer may elect to maintain its offer to purchase as a back-up offer (with the Purchase Price based on the highest bid made by Buyer at the hearing on the Motion). Any such back-up offer shall become effective upon the overbidder's failure to close in accordance with the terms of the Purchase Agreement, as may be modified by the Court, so long as Buyer's Purchase Price is the next highest bid for the Litigation Rights.

### Request for Waiver of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure

28. The Trustee asserts that waiver of the automatic 14-day stay of a sale order provided in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure is appropriate in this case. First, the Litigation is active and the Trustee wishes to avoid any further involvement in the Litigation at the earliest possible date, thereby avoiding potential additional administrative expenses that may be borne by the estate. Second, the Motion contemplates a closing within ten (10) days of the court's entry of its approval order on the Motion. Finally, the Trustee wishes to conclude her administration of this case as quickly as possible. Creditors and the estate would therefore benefit from a waiver of Rule 6004(h).

**WHEREFORE**, the Trustee respectfully requests the Court enter an order authorizing:

1) the Trustee's entry into and performance on behalf of the estate under the Purchase Agreement;

2) the sale of the estate's interests in the Litigation Rights pursuant to the terms of the Purchase Agreement, or as otherwise ordered by the Court, subject to the above-described overbidding procedures;

3) the sale of the estate's interests in the Litigation Rights on an "AS IS," "WHERE IS," basis, with no representations or warranties, express or implied, from the Trustee or the estate, and subject to any and all liens, encumbrances, exceptions and restrictions;

4) the Trustee to take such further actions and execute such documents as are necessary to consummate the proposed sale of the Litigation Rights.

5) the Trustee further requests that the court waive the 14-day stay of Rule 6004(h)

\\hsmfs2\clients\Didriksen, Susan\Bennett, Dwight Alan (7782-0009)\Pldg (hsm-4) sell litigation rights\pldg sale litigation rights mtn.wpd

HEFNER, STARK & MAROIS, LLP
Sacramento, California

of the Federal Rules of Bankruptcy Procedure and for such other relief as the court deems appropriate.

Dated:   October 19, 2015

HEFNER, STARK & MAROIS, LLP

By *Howard S. Nevins*
Howard S. Nevins, Attorneys for
SUSAN DIDRIKSEN, Chapter 7 Trustee