HEFNER, STARK & MAROIS, LLP
Howard S. Nevins (CA Bar Assn. No. 119366)
Aaron A. Avery (CA Bar Assn. No. 245448)
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833-4136
Telephone: (916) 925-6620
Fax No: (916) 925-1127
Email: hnevins@hsmlaw.com

Attorneys for
THOMAS A. ACEITUNO,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### (Sacramento Division)

| | |
|---|---|
| In re<br><br>SCOTT DANIEL MILES,<br><br>Debtor. | Case No.: 14-21752-C-7<br><br>DC No.:  HSM-012<br><br>Date:    November 10, 2015<br>Time:    9:30 a.m.<br>Place:   501 I Street<br>         Sacramento, CA<br>         Ctrm. 35, 6th Flr.<br>Judge:   Hon. Christopher M. Klein |

**TRUSTEE'S MOTION FOR APPROVAL OF SALE OF REAL PROPERTY (KNORR SWISS LANE, COLFAX, CALIFORNIA) FREE AND CLEAR OF LIENS, AND TO PAY EXPENSES OF SALE, INCLUDING COMMISSION TO REAL ESTATE AGENT**

THOMAS A. ACEITUNO, the duly appointed Chapter 7 Trustee in the pending bankruptcy case of SCOTT DANIEL MILES (the "Debtor"), Case No. 14-21752-C-7, by and through his counsel, Hefner, Stark & Marois, LLP ("Counsel"), files this Motion for Approval of Sale of Real Property (Knorr Swiss Lane, Colfax, California 95713) Free and Clear of Liens, and to Pay Expenses of Sale, Including Commission to Real Estate Agent (the "Motion"), as follows:

1.      This case was filed as a voluntary Chapter 13 case on February 24, 2014. The case was ordered converted to one under Chapter 7 by order dated February 2, 2015. The Trustee was appointed Chapter 7 Trustee on February 3, 2015, and continues to serve in that capacity.

1

\\hsmfs2\clients\Aceituno, Thomas A\Miles, Scott Daniel (7261-0008)\Pldg (hsm-12) sale of swiss knorr prop\pldg mtn sale swiss knorr prop (HSM-12).doc

2. Jurisdiction for the filing of this Motion exists pursuant to 28 U.S.C. sections 157 and 1334, 11 U.S.C. section 363, Federal Rule of Bankruptcy Procedure 6004, and the reference to this court by the District Court for the Eastern District of California.

3. One of the assets of the Estate, and the property that is the subject of this Motion, consists of the Estate's right, title, and interest in and to real property - a parcel of vacant land referred to on Debtor's Amended Schedule A simply as "Bareland Property APN 100-100-027-000" (the "Property"). The Trustee has determined that the Property is an undeveloped parcel located on Knorr Swiss Lane in the City of Colfax, County of Placer, State of California, consisting of approximately 8.6314 acres. A true and correct copy of the Debtor's Amended Schedule A filed in this case on April 17, 2015 (Docket No. 340), is attached as Exhibit "A" to the Exhibits Cover Sheet filed herewith.

4. The Debtor listed the Property on his Schedule A with an estimated value of $90,000.00 and no monetary encumbrances.

5. This Motion seeks approval from the Court authorizing: (i) the Trustee to enter into a Purchase Agreement (defined below) and to sell the Property pursuant to the terms thereof; (ii) the sale of the Property free and clear of known liens and encumbrances (if the Trustee is unable to obtain voluntary removal of these liens); (iii) payment of the commission to the Trustee's court-authorized real estate agent ("Agent") consistent with the approved listing agreement, if the proposed sale is approved and consummated with the proposed Buyer or any successful Qualified Overbidder (as described in the overbidding process below); (iv) payment of any and all taxes secured by the Property and related personal property, if any; (v) payment of other customary expenses of closing associated with this sale; and (vi) the Trustee to execute and deliver any other documents and to take such other actions as are reasonably required to consummate the proposed sale.

### Purchase Agreement

6. The Trustee has received and accepted an offer to purchase the Property from Sergey Drobnyy and/or assignees ("Buyer"), subject to Court approval and overbidding. The terms of the proposed sale are set forth in that certain Standard Offer,

2

\\hsmfs2\clients\Aceituno, Thomas A\Miles, Scott Daniel (7261-0008)\Pldg (hsm-12) sale of swiss knorr prop\pldg mtn sale swiss knorr prop (HSM-12).doc

Agreement and Escrow Instructions for Purchase of Real Estate (Vacant Land) dated as of September 29, 2015 (the "Purchase Agreement") and executed by the parties thereto. A true and correct copy of the Purchase Agreement is attached as Exhibit "B" to the Exhibits Cover Sheet filed and served with this Motion.

7. The material terms of the Purchase Agreement are as follows:

    a. The Purchase Price for the Property is $50,277.00 ("Purchase Price" or "Sales Proceeds");

    b. Buyer shall deposit the sum of $500.00 (the "Initial Deposit") within three business days of execution of the Purchase Agreement. The Deposit is creditable against the Purchase Price and is non-refundable after satisfaction of all of Buyer's conditions to closing, subject to Seller obtaining Court approval of the Purchase Agreement. If Buyer fails to close the purchase due to default by Buyer, the Deposit shall be non-refundable and shall be retained by the Trustee as liquidated damages for such breach;

    c. The proposed sale of the Property and the Purchase Agreement are subject to Bankruptcy Court approval through the granting of this Motion;

    d. Buyer will pay the Purchase Price and close escrow on or before twenty-one (21) days after the expiration or waiver of the Buyer's contingencies as provided in section 1.1 of the Purchase Agreement (the "Expected Closing Date"). The Buyer's contingency period expires twenty-one (21) days after approval by this court of the Motion. Since the closing of the proposed sale may require the recordation of a release by the IRS of its lien (discussed below), the Trustee also asks pursuant to this Motion for authority to extend the closing date for a reasonable time to obtain the necessary release.

    e. Pursuant to section 8.5 of the Purchase Agreement, one-half of the escrow fee for the sale will be allocated to the Buyer and paid from Buyer's funds through escrow, while the following closing costs will be allocated to the Seller and paid from the Seller's funds through escrow: (i) one-half of the escrow fee; (ii) the premium for a standard coverage owner's title insurance policy; (iii) the costs to prepare and record the grant deed

HEFNER, STARK & MAROIS, LLP
Sacramento, CA

3

\\hsmfs2\clients\Aceituno, Thomas A\Miles, Scott Daniel (7261-0008)\Pldg (hsm-12) sale of swiss knorr prop\pldg mtn sale swiss knorr prop (HSM-12).doc

Case 14-21752    Filed 10/13/15    Doc 468

and other costs related thereto, including the documentary transfer tax; (iv) the prorated share of real property taxes and assessments secured against the Property (including the costs to cure any delinquencies related thereto) and rents and utilities related to the Property; and (v) any amounts required to be withheld for state or federal taxes.

   f. Buyer will acquire the Property in its "AS IS," "WHERE IS," "WITH ALL FAULTS" condition. Trustee is making no representations or warranties, directly or indirectly, with respect to the condition or history of the Property and has no duty to inquire or investigate or provide any disclosures related to the Property. Buyer shall rely solely on its own investigation of the Property in the decision to acquire the Property.

  8. Title to the Property shall be subject to all liens or encumbrances for real property taxes and/or assessments which are not delinquent as of the close of escrow. As set forth in detail below, the Trustee is requesting authority from the Court to sell the Property free and clear of certain known liens and encumbrances pursuant to 11 U.S.C. § 363(f)(2) and / or (f)(4).

  9. Based upon the Trustee's review of the Debtor's Schedules and proofs of claims filed in this case, as well as the preliminary title report issued by Orange Coast Title Company of Northern California dated October 6, 2015 (the "prelim"), the Trustee has determined that the following monetary liens exist of record: Placer County real estate taxes (approximately $1,834.80 according to the prelim – this amount is not disputed); the United States of America (for the IRS) (approximately $96,422.59 according to the prelim – this amount is disputed); and Placer County personal property taxes (approximately $6,000.00 according to the prelim – this item is disputed).

  10. The Trustee intends that the undisputed secured claim of Placer County for real property taxes will be paid in full through the proposed sale.

  11. The Trustee intends that the IRS will be paid from the Net Sale Proceeds generated from the proposed sale, in full, to the extent any amount remains owing on account of its secured claim in this case. It is presently unclear precisely how much will be owed to the IRS at the time the proposed sale may close as the Trustee continues to work

\\hsmfs2\clients\Aceituno, Thomas A\Miles, Scott Daniel (7261-0008)\Pldg (hsm-12) sale of swiss knorr prop\pldg mtn sale swiss knorr prop (HSM-12).doc

on an accounting of the IRS claim. The Trustee has already generated considerable funds from prior sales of estate property and is currently holding such funds that have not been previously disbursed to Tri Counties Bank (the "Bank") on account of its senior liens on the assets sold, and pursuant to a previously entered Stipulation Regarding Liquidation of Tri Counties Bank's Collateral (the "Stipulation") for the allocation of the net sale proceeds from the sale of assets.

12. The Bank does not have a deed of trust / lien on the Property that is the subject of this Motion. Thus, the Trustee anticipates that the IRS will be paid in full from this proposed sale (again, if anything remains owing on its claim) and that the IRS will therefore consent to the proposed sale.

13. The prelim also evidences a lien in favor of Placer County for unsecured property taxes. For the reason set forth below, the Trustee disputes this lien.

14. The Trustee is not aware of any other secured interests against the Property, other than as set forth above. If any other monetary liens are discovered to exist against the Property, delivery of title free and clear from such other monetary liens may require the cooperation and consent of such other lien holders.

15. With respect to the improvements and any fixtures located on the Property in which this bankruptcy Estate owns any interest therein, this Motion seeks authority to sell and transfer to the Buyer the Estate's interest in such assets as part of the Property.

16. The proposed sale to Buyer is subject to overbidding at the hearing on this Motion. If no overbids for the Property are made at the hearing on this Motion, or if the Buyer is the highest bidder for the Property at the hearing on the Motion, the Deposit shall be applied to the Purchase Price or the highest price bid by Buyer at the hearing on the Motion, whichever is greater. If a Qualified Overbidder outbids Buyer, Buyer shall remain obligated to buy the Property at the Purchase Price or its highest bid, if the overbidder fails to close and Buyer is the next highest bidder on the Property. If a Qualified Overbidder outbids Buyer and closes its purchase of the Property, then the Purchase Agreement shall terminate and the Deposit shall be returned to Buyer.

## Sale Free and Clear of Liens

17. Among other bases available under 11 U.S.C. § 363(f), the Trustee may sell property of the Estate: "free and clear of any interest in such property of an entity other than the estate, only if -- (2) such entity consents; . . . [or] (4) such interest is in bona fide dispute[.]" Here, the Trustee anticipates obtaining the consent of the IRS, thereby providing the statutory basis for the free and clear sale order sought through the Motion.

18. As to the lien of the IRS, however, the Trustee also disputes the amount set forth in the prelim ($96,422.59), as that amount is substantially higher than the amount claimed in the amended proof of claim ($43,556.61) filed by the IRS in this case on October 7, 2014. The Trustee will attempt to resolve with the IRS the precise amount owed and intends that the agreed-upon amount, if any, will be paid to the IRS directly through escrow. The Trustee anticipates that this lien will be released voluntarily by the IRS prior to or in connection with the close of escrow. If that is not the case, the Trustee disputes such claim on the basis that it is in an incorrect amount, and asks that the instant sale be approved free and clear of the IRS tax lien on the basis that it is in dispute. Should that occur, the IRS lien should attach to the Net Sale Proceeds in the same order and priority as existed pre-petition, subject to any available defenses.

19. As to the lien of Placer County for personal property (business) taxes, the Trustee has investigated this lien and has determined that it has been paid, in full, in connection with the Trustee's sale (previously approved by this court) of other real property of the Debtor. Accordingly, the Trustee anticipates that this lien will be released voluntarily by the county prior to close of escrow. If that is not the case, the Trustee disputes such claim on the basis that it was paid, and asks that the instant sale be approved free and clear of the County's personal property tax lien on the basis that it is in dispute. Should that occur, the County's lien should attach to the Net Sale Proceeds in the same order and priority as existed pre-petition, subject to any available defenses.

## Proposed Terms for Overbidding

20. The proposed sale of the Property is subject to overbidding as may be made

6

\\hsmfs2\clients\Aceituno, Thomas A\Miles, Scott Daniel (7261-0008)\Pldg (hsm-12) sale of swiss knorr prop\pldg mtn sale swiss knorr prop (HSM-12).doc

at the hearing on the Motion by qualified overbidders. In the event any overbidders appear, the Trustee proposes that overbidding be conducted pursuant to the following procedures:

    a.    Any persons or entities wishing to bid on the Property shall be required to first become a qualified overbidder ("Qualified Overbidder");

    b.    Any person or entity wishing to become a Qualified Overbidder must deliver to the Trustee, no later than the commencement of the hearing on this Motion, a non-refundable deposit in the amount of $500.00 (the "Overbidder Deposit"), in the form of a cashier's check or money order made payable to "Thomas A. Aceituno, Chapter 7 Trustee of the Scott Daniel Miles Bankruptcy Estate," which will be applied to the purchase price for the Property if the overbidder is the successful purchaser following the hearing on the Motion;

    c.    The Trustee proposes that the initial overbid by a qualified bidder be not less than $51,000.00, with successive overbids in increments of $1,000.00 or greater;

    d.    If the successful overbidder fails to consummate the sale or otherwise breaches its obligations and/or covenants to the Trustee and the estate, the Overbidder Deposit shall be retained and administered as an asset of the estate. In the event that a Qualified Overbidder is not the successful overbidder on the Property, or if this Motion is not approved by the Court, the Overbidder Deposit shall be refundable and shall be returned by the Trustee to the Qualified Overbidder;

    e.    If the Buyer is the high bidder, it shall pay the greater of its high bid or the agreed-upon Purchase Price for the Property;

    f.    If a third party outbids the Buyer, and the Trustee receives full payment for the Property by the Closing Date (providing all other conditions are satisfied), or at such other time as the Court may provide, the Purchase Agreement shall be of no further effect. The third party high bidder must purchase the Property on identical terms to those set forth in the Purchase Agreement and this Motion, subject to any modifications ordered by the Court; and,

    g.    If full payment from the high bidder is not received within the required

period, the Buyer shall be obligated to pay its highest bid for the Property.

### Fair Price for the Asset

21. The Trustee has investigated the value of the Property, and has concluded that the Purchase Price is reasonable, notwithstanding the Debtor's initial valuation of the Property at $90,000.00.

22. On March 3, 2015, the Trustee obtained an order from this court authorizing his employment of the Agent to market and sell the Property. [Docket 311]. Prior to his employment of the Agent, the Debtor in the prior chapter 13 case employed the same Agent.

23. From discussions with the Agent, the Trustee has learned that the Agent has actively marketed the Property over approximately the past year. The Trustee believes the Property has been appropriately marketed to the public.

24. Notwithstanding the foregoing, the Trustee understands that, during this time, the Agent, first on behalf of the Debtor and then on the Trustee's behalf, has not received any formal offers for the purchase of the Property.

25. In light of (i) the apparent value and condition of the Property; (ii) the Buyer's willingness to accept the Property "as is," without warranties, etc; and (iii) the Buyer's willingness to timely pay for the Property, the Trustee has concluded that the Purchase Price of $50,277.00, and the other terms of the sale, are fair and reasonable and in the best interests of the estate and its creditors. The overbidding aspect of this Motion is designed to elicit higher offers from interested parties.

26. The Trustee submits that the sale of the Property on the terms outlined in this Motion is in the best interests of the estate and its creditors. Selling the Property to the Buyer for what the Trustee believes to be approximately fair market value, based in part upon consultations with his court-authorized Agent and her lengthy period of marketing the Property, is desirable on a number of levels, including the savings to the estate of possible costs of continued ownership.

///

**WHEREFORE**, the Trustee respectfully requests the Court enter an order authorizing the sale of the Property: 1) pursuant to the terms of the Purchase Agreement and this Motion, or as otherwise ordered by the Court; 2) on an "as is" "where is" "with all faults" basis, with no representations or warranties, express or implied, with respect to the Property, including related personal property; 3) free and clear of liens to Buyer, with the liens, interests and encumbrances of the identified creditors secured by the Property, attaching to the proceeds of the sale in the same order and in the same priority as they existed pre-petition, and with all defects / defenses reserved as to such liens / asserted liens; 4) with the Trustee authorized to take such further actions as required under the Purchase Agreement, and as requested in this Motion, including but not limited to reasonably extending the closing on the sale, and to execute such further documents as are necessary to consummate the proposed sale; 5) with the Trustee authorized to pay required closing costs, including taxes, through escrow, without further Court order; 6) with the Trustee authorized to pay a commission of 10% of the Purchase Price to his Agent, through escrow, without further Court order (to be split with Buyer's agent, as appropriate); and 7) with the Trustee retaining as funds of the estate all net sale proceeds for subsequent distribution in accordance with the Bankruptcy Code and orders of the court.

Dated: October 12, 2015

HEFNER, STARK & MAROIS, LLP

By *Howard S. Nevins*

Howard S. Nevins, Attorneys for
THOMAS A. ACEITUNO, Chapter 7 Trustee